```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
```

```
RR DONNELLEY & SONS COMPANY,   )
                               )
     Plaintiff and             ) No. 12 C 6198
     Counterclaim-Defendant,   ) Judge Sharon Johnson Coleman
                               ) Magistrate Judge Arlander Keys
     v.                        )
                               )
 XEROX CORPORATION,            )
                               )
     Defendant and             )
     Counterclaim-Plaintiff.   )
```

**MEMORANDUM OPINION AND ORDER**

In this case, RR Donnelley & Sons has sued Xerox Corporation for patent infringement. Currently before this Court is defendant and counterclaim-plaintiff Xerox Corporation's motion for a protective order to prevent RR Donnelley from disclosing Xerox's confidential information, highly confidential information and source code information to David L. Zwang, whom RR Donnelley recently identified as a consultant. For the reasons explained below, the motion is denied.

**Background & Procedural History**

On June 6, 2013, Judge Sharon Johnson Coleman, to whom this case is assigned, entered a 16-page Protective Order. That order provides, in relevant part, that

1

> [a]bsent written permission from the Producing Party or further order by the Court, the Receiving Party may not disclose Confidential information to any Person other than: (1) a Party's outside counsel of record, including necessary paralegal, secretarial and clerical Personnel assisting such counsel; (ii) a stenographer and videographer recording testimony concerning the information; (iii) subject to the provisions of paragraph 5(e) of this Order, experts and consultants and their staff whom a Party employs for purposes of this Litigation only; and (iv) the Court and Personnel assisting the Court.

Protective Order, ¶5(b). The Order includes an identical provision covering the disclosure of "Highly Confidential information." *Id.*, ¶5(c). And paragraph 5(e) provides that

> [a] Party may not disclose Confidential or Highly Confidential information to an expert or consultant pursuant to paragraph 5(b) or 5(c) of this Order until after the expert or consultant has signed an undertaking in the form of Attachment A to this Order. The Party obtaining the undertaking must serve it on all other parties within ten days after its execution. At least ten days before the first disclosure of Confidential or Highly Confidential information to an expert or consultant (or member of their staff), the Party proposing to make the disclosure must serve the Producing Party with a written identification of the expert or consultant and a copy of his or her curriculum vitae. If the Producing party has good cause to object to the disclosure (which does not include challenging the qualifications of the expert or consultant), it must serve the Party proposing to make the disclosure with a written objection within ten days after service of the identification. Unless the parties resolve the dispute within ten days after service of the objection, the Producing Party must move the Court promptly for a ruling, and the Confidential or Highly Confidential information may not be disclosed to the expert or consultant without the Court's approval.

2

Protective Order, ¶5(e).

Consistent with these provisions, on October 23, 2013, RR Donnelley advised Xerox that it was identifying David Zwang (among others) as an expert/consultant "to whom RR Donnelley may disclose Confidential, Highly Confidential information, and/or Restricted Confidential – Source Code."  *See* October 23, 2013 email from James Davis to Counsel for Xerox (attached as Exhibit 1 to Xerox's Memorandum of Law).  RR Donnelley attached Mr. Zwang's CV and an executed attachment to the Protective Order. By signing the attachment, Mr. Zwang agreed to comply with the provisions of the Protective Order and promised that he "will not divulge to Persons other than those specifically authorized by said Order, and will not copy or use except solely for the purpose of this action, any information obtained pursuant to said Order, except as provided in said Order."  *See* attachments to October 23, 2013 email from James Davis to counsel for Xerox (attached as part of Exhibit 1 to Xerox's Memorandum of Law).

Xerox requested some additional information -- namely, information concerning consulting engagements within the past five years.  And, when RR Donnelley balked at having to provide such information, Xerox noted that Mr. Zwang "has had a consulting arrangement with Xerox within the last year or two" and clarified that, before disclosing its Confidential and Highly Confidential information, it needed assurances that RR

Donnelley's experts and consultants were not, and had not within the past five years, "consulted with Xerox or a Xerox competitor who sells VDP software, print engines or DFEs." *See* November 1, 2013 email from Annie Huang to James Davis (attached as Exhibit 3 to Zerox's Memorandum of Law).

RR Donnelley disputed that Xerox was entitled to the additional information it sought. And Xerox, therefore, objected to the disclosure of any Confidential or Highly Confidential information to Mr. Zwang. Xerox then filed this motion, seeking a protective order to preclude the disclosure of any such information to Mr. Zwang.

## Discussion

Where, as here, the parties have executed a protective order governing the disclosure of confidential information, the Court must balance the interests of the party seeking disclosure (RR Donnelley) against those of the party seeking to prevent the disclosure (Xerox). *Saso Golf, Inc. v. Nike, Inc.*, No. 08 C 1110, 2009 WL 3242112, at *2 (N.D. Ill. Oct. 5, 2009)(citing Telular Corp. v. Vox2, Inc., No. 00 C 6144, 2001 WL 641188, at *1 (N.D. Ill. June 4, 2001)).

Looking first at Xerox's concerns, Xerox argues that Mr. Zwang should not be given access to its Confidential information because he "has consulted for, and presently consults with, a number of companies that are Xerox's direct competitors in the market for Xerox's accused products." Xerox's Memorandum of Law

4

in support of its motion for Protective Order, p. 2.  Given this, Xerox argues, "there is an unacceptable risk of inadvertent disclosure of Xerox's Confidential Information to Xerox's competitors." *Id.*, p. 4.  Xerox argues that Mr. Zwang has consulted for Xerox and its competitors, as recently as this year; indeed, because RR Donnelley has not provided the information Xerox requested concerning Mr. Zwang's consulting jobs, he may, in fact, be consulting with Xerox's competitors now or in the near future.  The risk of inadvertent disclosure, Xerox argues, is, therefore, high.

But Mr. Zwang signed the attachment to the protective order, promising not to disclose any Confidential or Highly Confidential information.  And, as a consultant, it would seem that he has a vested interest in ensuring that he is able to maintain the integrity of his representations. Indeed, if he cannot be trusted to honor those agreements, if he disclosed confidential information – whether deliberately or inadvertently – he would likely never be able to serve as a consultant again. The Court has no reason to doubt that he takes very seriously his obligations and his commitment of nondisclosure.  Indeed, Mr. Zwang has consulted for Xerox; if the company knew of any reason to question his judgment or his ability to honor his nondisclosure agreements, it would presumably have advised the Court.

5

As for RR Donnelley, it argues that Mr. Zwang is the only consultant or expert it disclosed who is an industry consultant (the rest are university professors); RR Donnelley argues that Mr. Zwang has "consulted for clients across the printing industry since the early 1990s" and is, therefore, "uniquely positioned to opine on the value and importance of RR Donnelley's patented technology in the printing industry." RR Donnelley's Memorandum in Opposition to Xerox's Motion for Protective Order, p. 1. According to RR Donnelley, the number of experts in the relevant field is small; "[i]n the printing industry, there are only a limited number of experts with business and technical experience in the patented technologies (e.g., variable data printing and digital front ends for presses) that extends back to the 1990s – when most of RR Donnelley's patents-in-suit were filed." Memorandum in Opposition, p. 4. What's more, argues RR Donnelley, the majority of those experts work for Xerox or its competitors, further limiting the options. *Id.*, pp. 4-5. RR Donnelley argues that Mr. Zwang, as one of the few print industry consultants with both technical and business expertise extending back to the 1990s, is uniquely positioned to serve as an expert and consultant, and its interest in using him in this capacity, and in disclosing to him the Confidential and Highly

6

Confidential information Xerox produces, far outweighs Xerox's interests.

Initially, in an ideal world, litigants would always be able to use the consultants and experts they want to use. That doesn't always happen, however. And, to be sure, Mr. Zwang is not the only consultant RR Donnelley disclosed; it disclosed six others, none of whom triggered an objection from Xerox. But RR Donnelly has explained that Mr. Zwang is not superfluous or redundant; in fact, RR Donnelley argues, Mr. Zwang is the only non-professor on its list of consultants, and he is the only one with technical and business expertise dating back to the relevant time frame, when the patents-in-suit issued. Although seven consultants seems excessive, patent cases often involve complex issues and processes and it would not be unheard of for the litigants to engage substantial assistance in the development and preparation of their claims and defenses. The Court has no reason to doubt RR Donnelley's assertion that Mr. Zwang's experience and expertise sets him apart. This, coupled with the fact that Mr. Zwang signed the protective order attachment, convinces the Court that the balance analysis discussed above lies in favor of RR Donnelley.

## Conclusion

For the reasons explained above, Xerox's motion for a protective order precluding the disclosure of Confidential information to David Zwang [Docket #123] is denied.

DATE: December 19, 2013        ENTERED:

*[signature]*
_____
ARLANDER KEYS
United States Magistrate Judge